## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

### CIVIL ACTION NO. _____

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) |
| | ) |
| BRIAN DAVISON, | ) |
| BARRY M. RYBICKI, | ) |
| EQUIALT LLC, | ) |
| EQUIALT FUND, LLC, | ) |
| EQUIALT FUND II, LLC, | ) |
| EQUIALT FUND III, LLC, | ) |
| EA SIP, LLC, | ) |
| | ) |
| **Defendants, and** | )   **UNDER SEAL** |
| | ) |
| 128 E. DAVIS BLVD, LLC, | ) |
| 310 78TH AVE, LLC, | ) |
| 551 3D AVE S, LLC, | ) |
| 604 WEST AZEELE, LLC, | ) |
| 2101 W. CYPRESS, LLC, | ) |
| 2112 W. KENNEDY BLVD, LLC, | ) |
| 5123 E. BROADWAY AVE, LLC, | ) |
| BLUE WATERS TI, LLC, | ) |
| BNAZ, LLC, | ) |
| BR SUPPORT SERVICES, LLC, | ) |
| BUNGALOWS TI, LLC, | ) |
| CAPRI HAVEN, LLC, | ) |
| EA NY, LLC, | ) |
| EQUIALT 519 3RD AVE S., LLC, | ) |
| MCDONALD REVOCABLE LIVING TRUST, | ) |
| SILVER SANDS TI, LLC, | ) |
| TB OLDEST HOUSE EST. 1842, LLC, | ) |
| | ) |
| **Relief Defendants.** | ) |
| | ) |

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF AND DEMAND FOR JURY TRIAL

Plaintiff Securities and Exchange Commission ("Commission") alleges:

1

# I.    INTRODUCTION

1.    The Commission brings this emergency action to halt an ongoing fraud conducted by EquiAlt LLC ("EquiAlt"), a private real estate investment company.  Beginning in 2011 to the present, Defendants EquiAlt, Brian Davison ("Davison") and Barry Rybicki ("Rybicki") conducted a Ponzi scheme raising more than $170 million from over 1,100 investors nationwide, many of them elderly, through fraudulent unregistered securities offerings.  Defendants promised investors that substantially all of their money would be used to purchase real estate in distressed markets in the United States and their investments would yield generous returns.  Instead, EquiAlt, Davison, and Rybicki misappropriated millions in investor funds for their own personal use and benefit.

2.    Despite receiving over $170 million in investor funds, the revenues generated by the Funds during the last nine years have been significantly less than the amounts of interest owed to investors.  Without sufficient revenues to pay the money owed to investors, the Defendants resorted to fraud, using new investor money to pay the returns promised to existing investors.  Meanwhile, Davison and Rybicki paid themselves millions from the Funds and spent it on luxury automobiles, fine jewelry and chartering private jets, among other expenditures.

3.    In addition to conducting a Ponzi scheme and misappropriating investor money, Davison and Rybicki made material misrepresentations and omissions to investors.  The investments—unregistered securities in the form of debentures issued by four real estate investment funds managed by EquiAlt—were falsely touted to investors as "secure," "safe," "low risk," and "conservative."  Moreover, Davison and Rybicki paid significant sales commissions to numerous unregistered sales agents who sold investments to unaccredited and unsophisticated investors in various states.

2

4.     At all times relevant to the allegations herein, Davison and Rybicki exercised control over the business operations of EquiAlt and its four real estate investment funds: EquiAlt Fund, LLC ("Fund 1"), EquiAlt Fund II, LLC ("Fund 2"), EquiAlt Fund III ("Fund 3"), and EA SIP, LLC ("EA SIP Fund")(the "Corporate Defendants").  More specifically, Davison controlled the accounting and finances for these Funds as well as their bank accounts.  He was also responsible for making Ponzi payments to investors.  Rybicki controlled communications with investors and executed agreements with investors, including debentures and subscription agreements containing numerous representations and warranties.

5.     Investor money has been misused and misappropriated in several distinct ways, including (a) money from one Fund used to purchase real estate for another Fund or for third party entities owned by Davison; (b) money from one Fund used to pay investors in another Fund; (c) substantial undisclosed commissions paid to unregistered sales agents; (d) substantial undisclosed fees such as due diligence fees, management fees, success fees, auction fees, underwriting fees, purchase discount fees, and bonuses paid to EquiAlt and Davison; and (e) substantial improper distributions of cash to Davison and Rybicki.  As a result of this misuse and misappropriation of millions of dollars of investor funds, Fund 1, Fund 2, and the EA SIP Fund are in a precarious financial condition.

6.     The combined assets of EquiAlt and its three active funds (Fund 1, Fund 2, and the EA SIP Fund) are insufficient to repay the principal and interest owed to approximately 1,100 investors.  By December 2020, investors in these three funds will be owed approximately $167 million in principal and interest.  However, as of November 2019, the assets of EquiAlt, Fund 1, Fund 2, and the EA SIP Fund total only $6.8 million in cash and real property purportedly worth $145 million, which is based on EquiAlt's own inflated valuation.  Thus, the combined assets of

3

the three active Funds are insufficient to pay investors the principal and interest owed to them at the end of this year.

7.      As a result of the conduct alleged in this Complaint, all the Defendants violated Sections 5(a) and 5(c) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77e(a) and 77e(c); Section 17(a)(2) of the Securities Act, 15 U.S.C. § 77q(a); and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Exchange Act Rule 10b-5, 17 C.F.R. § 240.10b-5.   Defendants Davison and Rybicki also, directly and indirectly, violated the anti-fraud provisions of the Exchange Act as Control Persons of EquiAlt under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).   Finally, Defendants EquiAlt, Davison, and Rybicki have also aided and abetted violations of Section 15(a) of the Exchange Act, 15 U.S.C. § 78o(a).  Unless restrained and enjoined, EquiAlt, Davison, and Rybicki are reasonably likely to continue to violate the federal securities laws.

8.      Relief Defendants have all received proceeds of the fraud without any legitimate entitlement to the money.

9.      To halt this ongoing fraud, maintain the status quo, and preserve investor assets, the Commission seeks several forms of relief, including asset freezes, appointment of a Receiver, sworn accountings, and an order prohibiting the destruction of documents.   The Commission also seeks permanent injunctions and civil money penalties against all the Defendants, and disgorgement of ill-gotten gains against the Defendants and Relief Defendants.

## II.      DEFENDANTS AND RELIEF DEFENDANTS

### A. Defendants

10.      **DAVISON** is a resident of Tampa, Florida.   During all relevant times Davison was EquiAlt's owner and Chief Executive Officer and together with Rybicki maintained control over

the Corporate Defendants. Davison personally controlled the bank accounts, finances, and accounting for each of the Corporate Defendants. Davison is not, and has never been, registered with the Commission, FINRA, or any state securities regulator. Davison, through his ownership of EquiAlt, owns Fund 1, Fund 2, Fund 3, and the EA SIP Fund.

11. **RYBICKI** is a resident of Phoenix, Arizona. During all relevant times, Rybicki was EquiAlt's Managing Director and President of Arizona Operations and together with Davison maintained control over the Corporate Defendants. In this capacity, Rybicki reviewed and approved marketing materials provided to investors, personally signed subscription agreements with investors and supervised the relationships with third party advisors selling the Funds. Rybicki also communicated directly with investors, and raised money from investors for the Funds. Rybicki is the owner of Relief Defendant BR Support Services, LLC, which provides investor-related services to EquiAlt, and has collected almost $24 million in commissions from the Funds. In addition to the commission payments, Rybicki also received checks for more than $3.4 million from the Funds for "return of principal." Rybicki is not, and has never been, registered with the Commission, FINRA, or any state securities regulator.

12. **EQUIALT** is a Tampa, Florida-based limited liability company not registered with the Commission in any capacity with no publicly traded stock. Formed in 2011, EquiAlt's primary business is to manage Fund 1, Fund 2, Fund 3, and the EA SIP Fund, and has approximately twelve employees in three states. During all relevant times, EquiAlt has been owned by Davison.

13. **FUND 1** is a Nevada limited liability company formed on May 23, 2011. On July 19, 2011, Fund 1 filed with the Commission a Form D notice of exempt offering of debentures pursuant to Rule 506 of Regulation D of the Securities Act seeking to raise $50 million from investors. On August 13, 2019, Fund 1 filed an amended Form D notice under Rule 506 of

Regulation D seeking to raise $125 million from investors.  Fund 1 has raised approximately $110 million from 733 investors during the period from January 2011 through November 2019.

14.      **FUND 2** is a Nevada limited liability company formed on April 24, 2013.  On April 4, 2016, Fund 2 filed with the Commission a Form D notice of exempt offering debentures pursuant to Rule 506 of Regulation D of the Securities Act seeking to raise $20 million from investors.  On September 1, 2017, Fund 2 filed an amended Form D notice under Rule 506 of Regulation D seeking to raise $50 million from investors.  Fund 2 has raised approximately $39 million from 266 investors during the period from 2013 through November 2019.

15.      **FUND 3** is a Nevada limited liability company formed on June 26, 2013. Fund 3 (now closed) raised approximately $2.6 million from investors during the period from July 2013 through December 2015.

16.      **EA SIP Fund** is a Nevada limited liability company formed on May 23, 2016.  On August 8, 2016, the EA SIP Fund filed with the Commission a Form D notice of exempt offering debentures pursuant to Rule 506 of Regulation D of the Securities Act seeking to raise $50 million from investors.  The EA SIP Fund has raised $21.7 million from 138 investors during the period from April 2016 through November 2019.

**B.  Relief Defendants**

17.      **128 E DAVIS BLVD, LLC** is a Florida limited liability company which received investors' proceeds emanating from the Defendants' securities fraud and holds assets belonging to the Funds.

18.      **310 78TH AVE, LLC** is a Florida limited liability company which received investors' proceeds emanating from the Defendants' securities fraud and holds assets belonging to the Funds.

19.     **551 3RD AVE S, LLC** is a Florida limited liability company which received investors' proceeds emanating from the Defendants' securities fraud and holds assets belonging to the Funds.

20.     **604 WEST AZEELE, LLC** is a Florida limited liability company which received investors' proceeds emanating from the Defendants' securities fraud and holds assets belonging to the Funds.

21.     **2101 W. CYPRESS, LLC** is a Florida limited liability company which received investors' proceeds emanating from the Defendants' securities fraud and holds assets belonging to the Funds.

22.     **2112 W. KENNEDY BLVD, LLC** is a Florida limited liability company which received investors' proceeds emanating from the Defendants' securities fraud and holds assets belonging to the Funds.

23.     **5123 E. BROADWAY AVE, LLC** is a Florida limited liability company which received investors' proceeds emanating from the Defendants' securities fraud and holds assets belonging to the Funds.

24.     **BLUE WATERS TI, LLC** is a Florida limited liability company which received investors' proceeds emanating from the Defendants' securities fraud and holds assets belonging to the Funds.

25.     **BNAZ, LLC** is a Florida limited liability company which received investors' proceeds emanating from the Defendants' securities fraud.

26.     **BR SUPPORT SERVICES, LLC** is an Arizona limited liability company which received investors' proceeds emanating from the Defendants' securities fraud.

27.     **BUNGALOWS TI, LLC** is a Florida limited liability company which received investors' proceeds emanating from the Defendants' securities fraud and holds assets belonging to the Funds.

28.     **CAPRI HAVEN, LLC** is a Florida limited liability company which received investors' proceeds emanating from the Defendants' securities fraud and holds assets belonging to the Funds.

29.     **EA NY, LLC** is a New York limited liability company which received investors' proceeds emanating from the Defendants' securities fraud and holds assets belonging to the Funds.

30.     **EQUIALT 519 3RD AVE S., LLC** is a Florida limited liability company which received investors' proceeds emanating from the Defendants' securities fraud and holds assets belonging to the Funds.

31.     **MCDONALD REVOCABLE LIVING TRUST** is a trust for the benefit of a relative of Davison which received investors' proceeds emanating from the Defendants' securities fraud and holds assets belonging to the Funds.

32.     **SILVER SANDS TI, LLC** is a Florida limited liability company which received investors' proceeds emanating from the Defendants' securities fraud and holds assets belonging to the Funds.

33.     **TB OLDEST HOUSE EST. 1842, LLC** is a Florida limited liability company which received investors' proceeds emanating from the Defendants' securities fraud and holds assets belonging to the Funds.

III.     <u>**JURISDICTION AND VENUE**</u>

34.     This Court has jurisdiction over this action pursuant to Sections 21(d), 21 (e), and 27 of the Exchange Act, 15 U.S.C. §§78u(d), 78u(e) and 78aa.

35.     This Court has personal jurisdiction over the Defendants and venue is proper in the Middle District of Florida because Davison resides in the District, EquiAlt has its principal place of business in the District, and the Funds' business operations have been conducted in the District. Furthermore, much of the conduct constituting the fraud alleged in this Complaint has occurred in the Middle District.

36.     In connection with the conduct alleged in the Complaint, Defendants, directly and indirectly, singly or in concert with others, made use of the means or instrumentalities of interstate commerce, the means or instruments of transportation or communication in the interstate commerce, and of the mails.

## IV.     FACTS

### A.  EquiAlt and its Offerings

37.     At all relevant times, Davison and Rybicki controlled EquiAlt whose primary business was to directly, or indirectly, manage all of the day-to-day operations of Funds including the solicitation of investors, and all of the Funds accounting and financial activities.  Davison formed EquiAlt in 2011 and had signature authority over the company's bank accounts.  Rybicki managed EquiAlt's relationships with various unlicensed sales agents (acting as unregistered broker-dealers) who sold the Funds' securities, communicated with investors, and was otherwise involved in raising money for the Funds.

38.     In marketing materials and through its website, EquiAlt claims to own a portfolio of revenue-generating condominiums and single and multi-family homes.  Meanwhile the private placement memorandum for the Funds state that the investment objective of the Funds is to purchase and sell single-family properties in distressed real estate markets in the U.S. and participate in opportunistic lending in the U.S.  In marketing materials provided to prospective

investors, EquiAlt boasts that its programs or offerings "protect against market conditions" and are "not susceptible to interest rate hikes & lending trends." EquiAlt also claims to provide commercial lending investments to construction and development projects, "filling in the gaps left by local community banking systems."

39. From January 2010 to November 2019, EquiAlt raised more than $170 Million from some 1,100 investors though the sale of fixed rate debentures issued by the Funds. Of that total amount, $145 Million was raised from January 2015 through November 2019. These debentures are securities within the meaning of Section 2(a)(1) of the Securities Act and Section 3(a)(10) of the Exchange Act. EquiAlt continues to market and raise funds from investors.

40. Defendants sold investors one type of security: 3-year or 4 year term debentures of the Funds providing a fixed annual return of 8 % to 10%. Many of the investors were elderly, retired and used IRAs to fund their investments in the Funds. Furthermore, many of the investors were unaccredited or unsophisticated in that they lacked knowledge and expertise in financial or business matters, were not capable of evaluating the merits and risks of the investment, and were not otherwise capable of bearing the economic risks of the investment. Many of the investors were attracted by representations that the investments in the Funds were "secure," "safe," "low risk," and "conservative" and by assurances that EquiAlt could not go bankrupt.

41. EquiAlt also used in-house employees and unlicensed external sales agents to solicit investments from the general public through cold calling campaigns, social media, websites, and in-person meetings. Although the private placement memorandum provided to many investors stated that the Funds "may" pay commissions or fees to registered broker/dealers or other financial intermediaries, the Funds *always* paid commissions of anywhere between 10%-14%. In fact, over a period of several years the Funds have paid commissions (primarily to Rybicki or his company

BR Support Services, LLC) totaling approximately $24 million using investor money. Moreover, many of the subscription agreements signed by Rybicki actually stated that the investments are being sold without commission.

### B. Fraudulent Conduct

#### i. The Defendants Are Conducting a Ponzi Scheme

42. The Funds have been operated as a Ponzi scheme almost since their inception. More specifically, in a classic Ponzi-scheme fashion, the Funds are paying investors their monthly interest payments for the debentures by raising and using new investor funds to pay old investors. While Fund 3 is now closed, Fund 1, Fund 2, and the EA SIP Fund have collectively been raising from investors approximately $2-3 million per month since January 2018.

43. Notably, since the beginning of their operations, the Funds have suffered significant financial losses with monthly costs and expenses, including the interest owed to investors, greatly exceeding revenues generated from the Funds' business operations.

44. Even if Fund 1, Fund 2 and the EA SIP Fund were able to liquidate their real estate holdings at their values stated in their internal books and records, the Funds' combined assets would fall millions of dollars short of the amount owed to investors by December 2020.

#### ii. Misappropriation of Investor Funds

45. Defendants Davison and Rybicki have misappropriated millions of dollars from the Funds for their own personal benefit. In fact, between 2017 and 2018 Davison and Rybicki received improper cash distributions totaling more than $11 million from the Funds. And in 2019, Davison and Rybicki took improper cash distributions from the Funds of $6.1 million and $1.2 million, respectively, purportedly for the repayment of loans to the Funds.

46.     Davison and Rybicki often used this money to purchase high-end personal items such as luxury automobiles (such as Ferraris, Porsches and a Rolls Royce), watches, and to charter private jets. Davison alone spent more than $2.7 million on luxury automobiles and watches and chartering private jets. Davison, in April 2017, also took cash distributions from several of the Funds totaling $1.8 million and used the money to pay personal back income taxes owed to the Internal Revenue Service.

47.     In addition to these improper cash distributions, when visiting New York, Davison stayed on multiple occasions at one of the Funds' most expensive properties, a $2.7 million Manhattan condominium which has never generated any income for the Funds, despite having been purchased several years ago with investor money.

### iii.   **Misuse of Investor Funds**

48.     Instead of investing their funds as promised, the Defendants have misused millions of dollars in several distinct ways – all of which are inconsistent with the private placement memorandum provided to investors.

49.     More specifically, the private placement memorandum for Fund 1, Fund 2, and the EA SIP Fund state that investor money would be used to purchase, own, improve and/or sell real property. In fact, the private placement memorandum for each of these Funds included a detailed chart of "projected sources and uses of cash." The chart, however, identified only the following six specific uses of that cash: investments in property, accounting and tax preparation, legal costs, investor relations and communications expenses, marketing and sponsorship event fees, and miscellaneous expenses and reserves. While the private placement memoranda for these Funds state that "All uses of proceeds are estimated and subject to change," only the above six specific

uses of investor proceeds are delineated in the document. An example of one of the charts included in the private placement memorandum for Fund 1 is set forth below:

| SOURCES: | | |
|---|---|---|
| Debentures: | | |
| TOTAL SOURCES: | | $50,000,000.00 |

| USES: | |
|---|---|
| Investment in Property | $45,000,000.00 |
| Accounting and Tax Preparation | $550,000.00 |
| Legal Costs | $250,000.00 |
| Investor Relations and Communications Expenses | $2,500,000.00 |
| Marketing and Sponsorship Event Fees | $200,000.00 |
| Miscellaneous Expenses and Reserves | $1,500,000.00 |
| **TOTAL USES:** | **$50,000,000.00** |

50.     Despite the restrictions of use contained in the private placement memoranda, the Defendants misused investor funds in several ways, including (a) money from one Fund being used to purchase real estate for another Fund or for third party entities owned by Davison; (b) money from one Fund being used to pay investors in another Fund; (c) substantial undisclosed commissions paid to unregistered sales agents; (d) substantial undisclosed fees such as due diligence fees, management fees, success fees, auction fees, underwriting fees, purchase discount fees, and bonuses paid to EquiAlt and Davison; and (e) substantial improper cash distributions to Davison and Rybicki. The misuse of investor funds was not an isolated event but rather was continuous over a period of several years and totaled millions of dollars.

### C. Misrepresentations and Omissions to Investors

### i.     False Claims About Use of Investor Funds

13

51.     The Defendants have misrepresented to investors how their money would be used by the Funds.  For example, the private placement memoranda for Fund 1, Fund 2, and the EA SIP Fund indicate that approximately 90% of investor funds would be used to "invest in property." Yet, less than 50% of investor funds were actually used for that purpose.  Indeed, a substantial part of the remaining funds was used for improper purposes such as the payment of millions of dollars in fees and bonuses to EquiAlt and others.  None of these other fees were described in the offering documents or marketing materials sent to investors.

52.     As alleged above in paragraph 49, the private placement memoranda for Fund 1, Fund 2, and the EA SIP Fund disclosed a list of specific uses of investor funds.  This list, however, did not disclose that the Funds would use investor money to pay EquiAlt extraneous fees described above totaling millions of dollars.  For example, although not disclosed to investors, the Funds paid EquiAlt a so-called "discount fee" or the difference in the listed sales price for a particular property and the ultimate purchase priced paid by the Fund to acquire such property.  Instead of benefiting from a lower ultimate sales price for the property, the Funds paid the actual cost savings to EquiAlt as a discount fee.  No aspect of this fee was ever disclosed to investors who were already paying substantial management and other fees to EquiAlt supposedly to manage the Funds.

53.     The Defendants also failed to disclose to investors that more than $6.61 million of investor money would be transferred between the Funds with the money raised by one Fund being used to pay the debts and obligations of another Fund.  For example, in December 2015, Fund 1 and Fund 2 transferred, respectively $1.29 million and $1.08 million to Fund 3, which Fund 3 used to pay approximately $2.3 million in principal and interest to its investors.  Fund 3 could not have made these payments without the cash infusion from Funds 1 and 2.

14

54.     The Defendants also failed to adequately disclose to investors that their funds would be used to pay commissions to unlicensed third party sales agents.  First, many of the subscription agreements signed by Rybicki stated that investments in the Funds were being sold without the payment of a commission.  Furthermore, while the private placement memoranda provided to investors stated that the Funds "may" pay commissions to sales agents, in reality commissions were *always* paid in connection with the sale of the Funds' investments.  In addition, in many cases investors never received the private placement memoranda and were not informed about any commission being paid in connection with their investment.

55.     Investors were also misled about the payment of management fees to EquiAlt.  Although EquiAlt collected substantial management fees from the Funds, many investors were expressly told that no management fees would be paid to EquiAlt.  For example, EquiAlt's President of Business Development and Marketing stated to Fund 2 investors in writing that EquiAlt had no management fees.

56.     Moreover, although the PPMs for all the Funds state that "the Manager will receive Management Fees as set forth in the Operating Agreement and as described more fully below," there is no description elsewhere in the PPMs (or in the Operating Agreements, which were not sent to investors) of what or how the management fees would be paid.  Nowhere in the offering materials is there any disclosure to investors that EquiAlt and Davision would receive more than $6.67 million in "management fees" from the Funds or of the millions of dollars in other fees described above.

### ii.      **False Statements About Risk**

57.     Investors were misled about the safety and risk of their investments.  While pitching investments in the Funds, the Defendants represented that the investments were "low risk," "safe,

and "conservative." Investors were even told that the Funds had "never lost investor dollars since inception." The investments, however, were anything but low risk, safe or conservative. In fact, the Funds have suffered substantial financial losses since their inception. Furthermore, Davison and Rybicki have depleted the Funds' assets through a years-long scheme involving outright misappropriation and misuse of investor funds.

### iii. False Statements About Registration With the Commission and Compliance with Applicable Laws

58. EquiAlt falsely told investors in at least one Fund (Fund 2) it was registered with the Commission since 2009. In truth, neither EquiAlt nor the Funds have ever been registered with the Commission in any capacity.

59. Written sales materials provided to investors also stated that "payments to licensed brokers and/or finders may be made in compliance with applicable federal and state securities laws." In reality, during a period of several years the Funds and BR Support Services, LLC paid commissions totaling millions of dollars to unlicensed sales agents deployed by EquiAlt to market and promote the Funds' investments.

### iv. False Statements About Fund Management

60. Investors were even misled about the persons involved in managing the Funds. At least two different versions of the private placement memoranda for Fund 1 and Fund 2 identified an individual referred to herein as "DD" as a CPA with an MBA degree who was serving as EquiAlt's Chief Financial Officer. The description of DD's professional background highlighted DD's prior experience at a Big-Four accounting firm, with SEC reporting requirements, as a CFO of a $100 million real estate mortgage and title company, and as an author. However, DD has never worked as EquiAlt's CFO.

# V. CLAIMS FOR RELIEF

## COUNT I

### Violations of Sections 5(a) and 5(c) of the Securities Act

### (Against all Defendants)

61.     The Commission repeats and realleges paragraphs 1 through 60 of this Complaint as if fully set forth herein.

62.     No registration statement was filed or in effect with the Commission pursuant to the Securities Act with respect to the securities issued by the Defendants subject to this count as described in this Complaint and no exemption from registration existed with respect to these securities.

63.   From January 2011 through the present, the Defendants directly and indirectly:

    (a)   made use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell securities, through the use or medium of a prospectus or otherwise;

    (b)   carried or caused to be carried securities through the mails or in interstate commerce, by any means or instruments of transportation, for the purpose of sale or delivery after sale; or

    (c)   made use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security,

without a registration statement having been filed or being in effect with the Commission as to such securities.

64.     By reason of the foregoing the Defendants have directly or indirectly violated, and unless enjoined and restrained are reasonably likely to continue to violate Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) and 77e(c).

## COUNT II

### Violations of Section 17(a)(1) of the Securities Act
### (Against All Defendants)

65.     The Commission repeats and realleges paragraphs 1 through 60 of this Complaint as if fully set forth herein.

66.     From January 2011 through the present, the Defendants, in the offer or sale of securities by use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, knowingly or recklessly employed devices, schemes or artifices to defraud.

67.     By reason of the foregoing, the Defendants have directly or indirectly violated, and unless enjoined and restrained are reasonably likely to continue to violate, Section 17(a)(1) of the Securities Act, 15 U.S.C. § 77q(a)(1).

## COUNT III

### Violations of Section 17(a)(2) of the Securities Act
### (Against All Defendants)

68.     The Commission repeats and realleges Paragraphs 1 through 60 of this Complaint as if fully set forth herein.

69.     From January 2011 through the present, the Defendants, in the offer or sale of securities by use of the means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly negligently obtained money or property by means of untrue statements of material facts or omissions to state material facts necessary to make the statements made, in the light of the circumstances under which they were made, not misleading.

70.     By reason of the foregoing, the Defendants have directly or indirectly violated, and unless enjoined and restrained, are reasonably likely to continue to violate, Section 17(a)(2) of the Securities Act, 15 U.S.C. § 77q(a)(2).

## COUNT IV

### Violations of Section 17(a)(3) of the Securities Act
### (Against All Defendants)

71.    The Commission repeats and realleges Paragraphs 1 through 60 of this Complaint as if fully set forth herein.

72.    From January 2011 through the present, the Defendants, in the offer or sale of securities by use of the means or instruments of transportation or communication in interstate commerce and by the use of the mails, directly or indirectly negligently engaged in transactions, practices and courses of business which have operated, are now operating or will operate as a fraud or deceit upon the purchasers.

73.    By reason of the foregoing, the Defendants have directly or indirectly violated, and unless enjoined and restrained, are reasonably likely to continue to violate, Section 17(a)(3) of the Securities Act, 15 U.S.C. § 77q(a)(3).

## COUNT V

### Violations of Section 10(b) and Rule 10b-5(a) of the Exchange Act
### (Against All Defendants)

74.    The Commission repeats and realleges Paragraphs 1 through 60 of this Complaint as if fully set forth herein.

75.    From January 2011 through the present, the Defendants, directly and indirectly, by use of the means and instrumentalities of interstate commerce, or of the mails in connection with the purchase or sale of securities, knowingly or recklessly employed devices, schemes or artifices to defraud.

76.     By reason of the foregoing, the Defendants have directly or indirectly directly violated, and unless enjoined and restrained, are reasonably likely to continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5(a), 17 C.F.R. § 240.10b-5(a), thereunder.

## COUNT VI

### Violations of Section 10(b) and Rule 10b-5(b) of the Exchange Act
### (Against All Defendants)

77.     The Commission repeats and realleges Paragraphs 1 through 60 of this Complaint as if fully set forth herein.

78.     From January 2011 through the present, the Defendants, directly and indirectly, by use of the means and instrumentalities of interstate commerce, or of the mails in connection with the purchase or sale of securities, knowingly or recklessly made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

79.     By reason of the foregoing, the Defendants have directly and indirectly violated, and unless enjoined, are reasonably likely to continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5(b), 17 C.F.R. § 240.10b-5(b), thereunder.

## COUNT VII

### Violations of Section 10(b) and Rule 10b-5(c) of the Exchange Act
### (Against All Defendants)

80.     The Commission repeats and realleges Paragraphs 1 through 60 of this Complaint as if fully set forth herein.

81.     From January 2011 through the present, the Defendants, directly and indirectly, by use of the means and instrumentalities of interstate commerce, or of the mails in connection with the purchase or sale of securities, knowingly or recklessly engaged in acts, practices and courses of business which operated as a fraud upon the purchasers of such securities.

82.     By reason of the foregoing, the Defendants have directly and indirectly violated, and unless enjoined and restrained, are reasonably likely to continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5(c), 17 C.F.R. § 240.10b-5(c), thereunder.

## COUNT VIII
### Section 20(a) of the Exchange Act – Control Person Liability

### (Against Davison and Rybicki for EquiAlt, Fund 1, Fund 2, Fund 3 and the EA SIP Fund's Violations of Section 10(b) and Rule 10b-5 of the Exchange Act)

83.     The Commission repeats and realleges Paragraphs 1 through 60 of this Complaint as if fully set forth herein.

84.     From January 2011 through the present Davison and Rybicki have been, directly or indirectly, control persons of EquiAlt, Fund 1, Fund 2, Fund 3, and the EA SIP Fund for purposes of Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).

85.     From January 2011 through the present, EquiAlt, Fund 1, Fund 2, Fund 3, and the EA SIP Fund have violated Section 10(b) and Rule 10b-5 of the Exchange Act.

86.     As control persons of EquiAlt, Fund 1, Fund 2, Fund 3 and the EA SIP Fund are jointly and severally liable with and to the same extent as EquiAlt, Fund 1, Fund 2, Fund 3 and the EA SIP Fund for each of their violations of Section 10(b) and Rule 10b-5 of the Exchange Act.

87.     By reason of the foregoing, Davison and Rybicki have directly and indirectly violated, and unless enjoined and restrained, are reasonably likely to continue to violate, Sections 10(b) and

20(a) and Rule 10b-5 of the Exchange Act, 15 U.S.C. § 78j(b) and § 78t(a), and 17 C.F.R. § 240.10b-5.

**COUNT IX**

**Aiding and Abetting Violations of Section 15(a) of the Exchange Act**

**(Against EquiAlt, Davison, and Rybicki)**

88.     The Commission repeats and realleges paragraphs 1 through 60 of this Complaint as if fully set forth herein.

89.     Several unlicensed sales agents used by Defendants to sell the Funds' securities acted as brokers or dealers and have made use of the mails or any means or instrumentality of interstate commerce to effect transactions in securities, or to induce or attempt to induce the purchase or sale of securities, without being associated with a broker or dealer that was registered with the Commission in accordance with Section 15(b) of the Exchange Act, 15 U.S.C. § 78o(b), in violation of Section 15(a) of the Exchange Act 15 U.S.C. § 78o(a).

90.     These agents solicited investments in the Funds, provided investors with offering materials, provided advice on the merits of the investment, and received transaction-based compensation.   They have never been registered with the Commission as broker-dealers or associated with a registered broker-dealer.

91.     Defendants EquiAlt, Davison, and Rybicki, knowingly or recklessly, substantially assisted the violations of Section 15(a) of the Exchange Act by these unlicensed sales agents. Unless enjoined, Defendants EquiAlt, Davison, and Rybicki are reasonably likely to continue to provide substantial assistance in connection with the violations of Section 15(a) of the Exchange Act by these unlicensed sales agents.

22

## RELIEF REQUESTED

**WHEREFORE**, the Commission respectfully requests the Court find the Defendants committed the violations alleged, and:

### A.
### Temporary Restraining Order, Permanent Injunctive and Permanent Injunction

Issue a   Temporary Restraining Order,   a Preliminary Injunction and a Permanent Injunction and restraining and enjoining: (1) the Defendants from violating Sections 5(a) and 5(c) and 17(a) of the Securities Act and Sections 10(b) and 15(a)(1) and Rule 10b-5 of the Exchange Act; (2) Davison and Rybicki from violating Section 20(a) of the Exchange Act; and (3) EquiAlt, Davison and Rybicki from aiding and abetting violations of Section 15(a) of the Exchange Act.

### B.
### Asset Freeze

Issue an Order freezing the assets of the Defendants and Relief Defendants.

### C.
### Appointment of a Receiver

Appoint a receiver over Defendants EquiAlt, Fund1, Fund 2, Fund 3, EA SIP Fund, and the Relief Defendants.

### D.
### Records Preservation

Issue an Order restraining and enjoining Defendants and Relief Defendants , their directors, officers, agents, servants, employees, attorneys, depositories, banks, and those persons in active concert or participation with any one or more of them, and each of them, from, directly or indirectly, destroying, mutilating, concealing, altering, disposing of, or otherwise rendering illegible in any manner, and of the books, records, documents, correspondence, brochures, manuals, papers, ledgers, accounts, statements, obligations, files and other property of or pertaining to Defendants and Relief Defendants, wherever located and in whatever form, electronic

or otherwise, that refer or relate to the acts or courses of conduct alleged in this Complaint, until further Order of this Court.

### E.
### Sworn Accounting

Issue an Order directing Defendants and Relief Defendants to provide a sworn accounting of all assets and liabilities, including all monies and real properties directly or indirectly received from investors and all uses of investor funds.

### F.
### Disgorgement and Prejudgment Interest

Issue an Order directing the Defendants and Relief Defendants to disgorge all ill-gotten gains or proceeds received from investors as a result of the acts and/or courses of conduct complained of herein, with prejudgment interest thereon.

### G.
### Civil Money Penalties

Issue an Order directing the Defendants to pay civil money penalties pursuant to Section 20(d) of the Securities Act and Section 21(d) of the Exchange Act.

### H.
### Further Relief

Grant such other and further relief as may be necessary and appropriate.

### I.
### Retention of Jurisdiction

Further, the Commission respectfully requests that the Court retain jurisdiction over this action in order to implement and carry out the terms of all orders and decrees that it may enter, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

## DEMAND FOR JURY TRIAL

The Commission hereby demands a trial by jury in this case.

Respectfully submitted,

February 11, 2020                    By: _____

Alise Johnson, Esq.
Senior Trial Counsel
Fla. Bar No. 0003270
Direct Dial: (305) 982-6385
Email: johnsonali@sec.gov

Attorney for Plaintiff
**SECURITIES AND EXCHANGE COMMISSION**
801 Brickell Avenue, Suite 1950
Miami, Florida 33131
Telephone: (305) 982-6300
Facsimile: (305) 536-4154

JS 44 (Rev. 09/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION | DAVISON, Brian; RYBICKI, Barry M; EQUIALT LLC; EQUIALT FUND, LLC; EQUIALT FUND II, LLC; EQUIALT FUND III, LLC; EA SIP, LLC |
| **(b)** County of Residence of First Listed Plaintiff _____ <br> *(EXCEPT IN U.S. PLAINTIFF CASES)* | County of Residence of First Listed Defendant Hillsborough <br> *(IN U.S. PLAINTIFF CASES ONLY)* <br> NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |
| **(c)** Attorneys *(Firm Name, Address, and Telephone Number)* <br> Alise Johnson, Esq. <br> SEC, 801 Brickell Ave., Suite 1950, Miami, FL 33131; <br> (305) 982-6385; johnsonali@sec.gov | Attorneys *(If Known)* |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1  U.S. Government Plaintiff

☐ 2  U.S. Government Defendant

☐ 3  Federal Question *(U.S. Government Not a Party)*

☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance <br> ☐ 120 Marine <br> ☐ 130 Miller Act <br> ☐ 140 Negotiable Instrument <br> ☐ 150 Recovery of Overpayment & Enforcement of Judgment <br> ☐ 151 Medicare Act <br> ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) <br> ☐ 153 Recovery of Overpayment of Veteran's Benefits <br> ☐ 160 Stockholders' Suits <br> ☐ 190 Other Contract <br> ☐ 195 Contract Product Liability <br> ☐ 196 Franchise | **PERSONAL INJURY** <br> ☐ 310 Airplane <br> ☐ 315 Airplane Product Liability <br> ☐ 320 Assault, Libel & Slander <br> ☐ 330 Federal Employers' Liability <br> ☐ 340 Marine <br> ☐ 345 Marine Product Liability <br> ☐ 350 Motor Vehicle <br> ☐ 355 Motor Vehicle Product Liability <br> ☐ 360 Other Personal Injury <br> ☐ 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY** <br> ☐ 365 Personal Injury - Product Liability <br> ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability <br> ☐ 368 Asbestos Personal Injury Product Liability <br> **PERSONAL PROPERTY** <br> ☐ 370 Other Fraud <br> ☐ 371 Truth in Lending <br> ☐ 380 Other Personal Property Damage <br> ☐ 385 Property Damage Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 <br> ☐ 690 Other <br><br><br> **LABOR** <br> ☐ 710 Fair Labor Standards Act <br> ☐ 720 Labor/Management Relations <br> ☐ 740 Railway Labor Act <br> ☐ 751 Family and Medical Leave Act <br> ☐ 790 Other Labor Litigation <br> ☐ 791 Employee Retirement Income Security Act | ☐ 422 Appeal 28 USC 158 <br> ☐ 423 Withdrawal 28 USC 157 <br><br> **PROPERTY RIGHTS** <br> ☐ 820 Copyrights <br> ☐ 830 Patent <br> ☐ 835 Patent - Abbreviated New Drug Application <br> ☐ 840 Trademark <br> **SOCIAL SECURITY** <br> ☐ 861 HIA (1395ff) <br> ☐ 862 Black Lung (923) <br> ☐ 863 DIWC/DIWW (405(g)) <br> ☐ 864 SSID Title XVI <br> ☐ 865 RSI (405(g)) | ☐ 375 False Claims Act <br> ☐ 376 Qui Tam (31 USC 3729(a)) <br> ☐ 400 State Reapportionment <br> ☐ 410 Antitrust <br> ☐ 430 Banks and Banking <br> ☐ 450 Commerce <br> ☐ 460 Deportation <br> ☐ 470 Racketeer Influenced and Corrupt Organizations <br> ☐ 480 Consumer Credit (15 USC 1681 or 1692) <br> ☐ 485 Telephone Consumer Protection Act <br> ☐ 490 Cable/Sat TV <br> ☒ 850 Securities/Commodities/ Exchange <br> ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation <br> ☐ 220 Foreclosure <br> ☐ 230 Rent Lease & Ejectment <br> ☐ 240 Torts to Land <br> ☐ 245 Tort Product Liability <br> ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights <br> ☐ 441 Voting <br> ☐ 442 Employment <br> ☐ 443 Housing/ Accommodations <br> ☐ 445 Amer. w/Disabilities - Employment <br> ☐ 446 Amer. w/Disabilities - Other <br> ☐ 448 Education | **Habeas Corpus:** <br> ☐ 463 Alien Detainee <br> ☐ 510 Motions to Vacate Sentence <br> ☐ 530 General <br> ☐ 535 Death Penalty <br> **Other:** <br> ☐ 540 Mandamus & Other <br> ☐ 550 Civil Rights <br> ☐ 555 Prison Condition <br> ☐ 560 Civil Detainee - Conditions of Confinement | **IMMIGRATION** <br> ☐ 462 Naturalization Application <br> ☐ 465 Other Immigration Actions | ☐ 870 Taxes (U.S. Plaintiff or Defendant) <br> ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 893 Environmental Matters <br> ☐ 895 Freedom of Information Act <br> ☐ 896 Arbitration <br> ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision <br> ☐ 950 Constitutionality of State Statutes |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation - Transfer
☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
15 U.S.C. §§ 77e(a) and 77e(c); 77q(a)(1-3); 78j(b), 78o(a-b), 78t(a); 17 C.F.R. § 240.10b-5(a-c)

Brief description of cause:
violation of federal securities laws

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ TRO, asset freeze, perm inj, disgorgement, PJI, civ pen., sworn acctg

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____  DOCKET NUMBER _____

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| February 11, 2020 | *[signature]* |

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____